ALAN R. BRAYTON, ESQ., S.B. #73685
DAVID R. DONADIO, ESQ., S.B. #154436
BRAYTON❖PURCELL LLP
Attorneys at Law
222 Rush Landing Road
P.O. Box 6169
Novato, California 94948-6169
(415) 898-1555
(415) 898-1247 (Fax No.)

Attorneys for Plaintiffs

# THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| MICHAEL HALSETH, ROBERT WAGENMAN, LARRY ROBINSON, DONALD HUNTER, <br><br> Plaintiffs, <br><br> vs. <br><br> GENERAL ELECTRIC COMPANY, VIAD CORP., and DOES 1-300, <br><br> Defendants. | No. C07-2543-EMC <br><br> COMPLAINT FOR ASBESTOS PERSONAL INJURY/ PRODUCTS LIABILITY; <br><br> DEMAND FOR JURY TRIAL |

## I.

## PARTIES

1. Plaintiffs in this action are individuals who have sustained asbestos-related lung injuries as a result of their inhalation of asbestos fibers through their occupational exposure to asbestos.

2. Each of these individuals sustained an asbestos-related lung disease by precisely the same mechanism: the inhalation of asbestos fibers released during the handling of asbestos-containing products at their jobsites. The pathogenesis of each plaintiffs' asbestos-related diseases is explained on **Exhibit A**, attached to plaintiff's complaint and incorporated by reference herein.

3.      All of plaintiffs' claims arise out of a similar series of occurrences:  repeated exposure to asbestos-containing products manufactured, distributed, and/or sold by defendants and supplied to, installed and/or maintained by defendants at plaintiffs' worksites, over a period of years, caused from release of toxic asbestos fibers and subsequent inhalation by the plaintiffs, resulting in cumulative, progressive, incurable lung diseases.

4.      Each plaintiff claims damages for an asbestos-related disease arising from an identical series of occurrences not dependent on each individual plaintiff's worksite but on the fact that asbestos-containing products, when handled in the manner in which they were intended, released harmful asbestos fibers which when inhaled by plaintiffs, caused serious lung disease. The allegations of plaintiffs regarding the nature of their asbestos-related diseases, the nature of asbestos; the propensity of asbestos to cause disease, the criteria for diagnosis of disease, are all identical. As used herein, plaintiffs shall mean the above-captioned asbestos-injured plaintiffs.

5.      The true names and capacities, whether individual, corporate, associate, governmental or otherwise, of defendants DOES 1 through 300, are unknown to plaintiffs at this time, who therefore sues said defendants by such fictitious names.  When the true names and capacities of said defendants have been ascertained, plaintiffs will amend this complaint accordingly.  Plaintiffs are informed and believe, and thereon allege, that each defendant designated herein as a DOE is responsible, negligently or in some other actionable manner, for the events and happenings hereinafter referred to, and caused injuries and damages thereby to the plaintiffs, as hereinafter alleged.

6.      Plaintiffs are informed and believe, and thereon allege that at all times herein mentioned, defendants and DOES 1 through 300, inclusive, were and are corporations, partnerships, unincorporated associations, sole proprietorships and/or other business entities organized and existing under and by virtue of the laws of the State of California, or the laws of some other state or foreign jurisdiction, and that said defendants, and each of them, were and are authorized to do and are doing business in the State of California, and that said defendants have regularly conducted business in the County of San Francisco, State of California.

**II.**

**JURISDICTION, VENUE AND INTRADISTRICT ASSIGNMENT**

7. <u>Jurisdiction</u>:  Plaintiff MICHAEL HALSETH is a citizen of Oregon. Plaintiff, ROBERT WAGENMAN is a citizen of California.  Plaintiff LARRY ROBINSON is a citizen of Washington.  Plaintiff DONALD HUNTER is a citizen of Pennsylvania.  Defendant GENERAL ELECTRIC COMPANY is a corporation incorporated under the laws of the State of New York and having its principal places of business in the State of Connecticut.   Defendant VIAD CORPORATION, is a corporation incorporated under the laws of, and having its principal places of business in the State of Arizona.

This Court has original jurisdiction under 25 USC § 1332, in that it is a civil action between citizens of different states in which the matter in controversy exceeds, exclusive of costs and interest, seventy-five thousand dollars.

8. <u>Venue / Intradistrict Assignment</u>.   Venue is proper in the Northern District of California and assignment to the San Francisco Division of said district is proper as a substantial part of the events or omissions which give rise to the claims asserted by plaintiffs herein occurred within the County of San Francisco, California, and all of the defendants are subject to personal jurisdiction in this district at the time the action is commenced.

**III.**

**CAUSES OF ACTION**

<u>FIRST CAUSE OF ACTION</u>

(Negligence)

PLAINTIFF MICHAEL HALSETH COMPLAINS OF DEFENDANTS GENERAL ELECTRIC COMPANY,   DOES 1-300, THEIR "ALTERNATE ENTITIES," AND EACH OF THEM; PLAINTIFF, ROBERT WAGENMAN COMPLAINS OF DEFENDANTS GENERAL ELECTRIC COMPANY,   DOES 1-300, THEIR "ALTERNATE ENTITIES," AND EACH OF THEM; PLAINTIFF LARRY ROBINSON COMPLAINS OF DEFENDANTS GENERAL ELECTRIC COMPANY,   DOES 1-300, THEIR "ALTERNATE ENTITIES," AND EACH OF THEM; PLAINTIFF DONALD HUNTER COMPLAINS OF DEFENDANTS GENERAL

ELECTRIC COMPANY, VIAD CORP., DOES 1-300, THEIR "ALTERNATE ENTITIES," AND EACH OF THEM; AND ALL PLAINTIFFS FOR A CAUSE OF ACTION FOR NEGLIGENCE ALLEGE:

9. At all times herein mentioned, each of the named defendants and DOES 1 through 300 was the successor, successor in business, successor in product line or a portion thereof, assign, predecessor, predecessor in business, predecessor in product line or a portion thereof, parent, holding company, affiliate, venturer, co-venturer, subsidiary, wholly or partially owned by, or the whole or partial owner of or member in an entity researching, studying, manufacturing, fabricating, designing, modifying, labeling, assembling, distributing, leasing, buying, offering for sale, supplying, selling, inspecting, testing, authorizing, approving, certifying, facilitating, promoting, representing, endorsing servicing, installing, contracting for installation, repairing, marketing, warranting, rebranding, manufacturing for others, packaging, specifying, requiring, mandating, or otherwise directing and/or facilitating the use of, or advertising a certain product, namely asbestos, and/or other products containing asbestos. Said entities shall hereinafter collectively be called ALTERNATE ENTITIES. Each of the herein named defendants is liable for the tortious conduct of each successor, successor in business, successor in product line or a portion thereof, assign, predecessor in product line or a portion thereof, parent, holding company, affiliate, venturer, co-venturer, subsidiary, whole or partial owner, or wholly or partially owned entity, or entity that it was a member of, or funded, that researched, studied, manufactured, fabricated, designed, modified, labeled, assembled, distributed, leased, bought, offered for sale, supplied, sold, inspected, serviced, installed, contracted for installation, repaired, marketed, warranted, rebranded, manufactured for others and advertised a certain product, namely asbestos, and other products containing asbestos. The following defendants, and each of them, are liable for the acts of each and every ALTERNATE ENTITY, and each of them, in that there has been a virtual destruction of plaintiff's remedy against each such ALTERNATE ENTITY; defendants, and each of them, have acquired the assets, product line, or a portion thereof, of each such ALTERNATE ENTITY; defendants, and each of them, caused the destruction of plaintiff's remedy against each such ALTERNATE ENTITY; each such

defendant has the ability to assume the risk-spreading role of each such ALTERNATE ENTITY; and that each such defendant enjoys the goodwill originally attached to each such ALTERNATE ENTITY:

| DEFENDANT | ALTERNATE ENTITY |
|---|---|
| GENERAL ELECTRIC COMPANY | MATTERN X-RAY |
| | HOTPOINT ELECTRIC APPLIANCE COMPANY LIMITED |
| | TRUMBULL ELECTRIC MANUFACTURING COMPANY |
| | G E INDUSTRIAL SYSTEMS |
| | CURTIS TURBINES |
| | PARSONS TURBINES |
| | GENERAL ELECTRIC JET ENGINES |
| VIAD CORP. | ARMOUR AND COMPANY |
| | ARMOUR & CO. |
| | ARMOUR & COMPANY |
| | THE GREYHOUND CORPORATION |
| | G. ARMOUR ARIZONA COMPANY |
| | ARIZONA DIAL |
| | 111 CORPORATION |
| | BALDWIN LOCOMOTIVES |
| | BALDWIN LOCOMOTIVE WORKS |
| | LIMA-HAMILTON CORPORATION |
| | LIMA LOCOMOTIVE WORKS |
| | BALDWIN-LIMA-HAMILTON CORPORATION |
| | BALDWIN-LESSING-HAMILTON |
| | THE MIDVALE COMPANY |
| | THE DIAL CORPORATION |
| | THE NEW DIAL CORP. |
| | ALSTOM POWER, INC. |
| | ECOLAIRE HEAT TRANSFER, INC, HEAT EXCHANGE DIVISION |
| | ALSTOM HEAT EXCHANGE DIVISION |
| | GRISCOM-RUSSELL (product) |

10.     At all times herein mentioned, defendants, their ALTERNATE ENTITIES, and each of them, were and are engaged in the business of researching, manufacturing, fabricating, designing, modifying, labeling, assembling, distributing, leasing, buying, offering for sale, supplying, selling, inspecting, endorsing, testing, authorizing, approving, certifying, facilitating, promoting, representing, servicing, installing, contracting for installation, repairing, marketing, warranting, rebranding, manufacturing for others, packaging, specifying, requiring, mandating, or otherwise directing and/or facilitating the use of, or advertising a certain product, namely asbestos and other products containing asbestos.

11.     At all times herein mentioned, defendants, their ALTERNATE ENTITIES and

1  each of them, singularly and jointly, negligently, and carelessly researched, manufactured, fabricated, designed, modified, tested or failed to test, abated or failed to abate, warned or failed to warn of the health hazards, labeled, assembled, distributed, leased, bought, offered for sale, supplied, sold, inspected, serviced, authorized, approved, certified, facilitated, promoted, installed, represented, endorsed, contracted for installation of, repaired, marketed, warranted, rebranded, manufactured for others, packaged and advertised, a certain product, namely asbestos, and other products containing asbestos, in that said products caused personal injuries to users, consumers, workers, bystanders and others, including the plaintiff herein, (hereinafter collectively called "exposed persons"), while being used in a manner that was reasonably foreseeable, thereby rendering said products hazardous, unsafe and dangerous for use by "exposed persons".

12.     Defendants, their ALTERNATE ENTITIES, and each of them, had a duty to exercise due care in the pursuance of the activities mentioned above and defendants, and each of them, breached said duty of due care.

13.     Defendants, their ALTERNATE ENTITIES and each of them, knew, or should have known, and intended that the aforementioned asbestos and products containing asbestos and related products and equipment, would be transported by truck, rail, ship, and other common carriers, that in the shipping process the products would break, crumble, or be otherwise damaged; and/or that such products would be used for insulation, construction, plastering, fireproofing, soundproofing, automotive, aircraft and/or other applications, including, but not limited to unpacking, preparing, using, sawing, drilling, chipping, hammering, scraping, sanding, breaking, removing, maintaining, inspecting, "rip-out", and other manipulation, resulting in the release of airborne asbestos fibers, and that through such foreseeable use and/or handling "exposed persons", including plaintiff herein, would use or be in proximity to and exposed to said asbestos fibers, which contaminated the packaging, products, environment, and clothing of persons working in proximity to said products, directly or through reentrainment.

14.     Plaintiffs have used, handled, or been otherwise exposed to asbestos and asbestos-containing products referred to herein in a manner that was reasonably foreseeable.

Plaintiffs' exposure to asbestos and asbestos-containing products is on current information as set forth at various locations and circumstances in **Exhibit A**, attached to plaintiff's complaint and incorporated by reference herein.

15. As a direct and proximate result of the acts, omissions, and conduct of the defendants, their ALTERNATE ENTITIES, and each of them, as aforesaid, plaintiffs' exposure to asbestos and asbestos-containing products caused severe and permanent injury, damage, loss, or harm to the plaintiff as set forth in **Exhibit A,** attached to plaintiffs' complaint and incorporated by reference herein.

16. Plaintiffs are informed and believe, and thereon allege, that progressive lung disease, cancer, and other serious diseases are caused by inhalation or ingestion of asbestos fibers without perceptible trauma and that said injury, damage, loss, or harm results from exposure to asbestos and asbestos-containing products over a period of time.

17. Plaintiffs each suffer from a condition related to exposure to asbestos and asbestos-containing products. Plaintiffs are not aware at the time of exposure that asbestos or asbestos-containing products presented risk of injury and/or disease.

18. As a direct and proximate result of the aforesaid conduct of defendants, their ALTERNATE ENTITIES, and each of them, plaintiffs have suffered, and continue to suffer, permanent injuries and/or future increased risk of injuries to their persons, body and health, including, but not limited to, asbestosis, other lung damage, and cancer, and the mental and emotional distress attendant thereto, from the effect of exposure to asbestos fibers, all to their general damage.

19. As a direct and proximate result of the aforesaid conduct of the defendants, their "alternate entities," and each of them, plaintiffs have incurred, are presently incurring, and will incur in the future, liability for physicians, surgeons, nurses, hospital care, medicine, hospices, x-rays and other medical treatment, the true and exact amount thereof being unknown to plaintiffs at this time, and plaintiffs pray leave to amend this complaint accordingly when the true and exact cost thereof is ascertained.

20. As a further direct and proximate result of the said conduct of the defendants,

1  their "alternate entities," and each of them, plaintiffs have incurred pecuniary losses, the full
2  nature and extent of which are not yet known to plaintiffs; and leave is requested to amend this
3  complaint to conform to proof at the time of trial.
4     21.   Defendants, their ALTERNATE ENTITIES, and each of them, and their officers,
5  directors and managing agents participated in, authorized, expressly and impliedly ratified, and
6  had full knowledge of, or should have known of, each of the acts set forth herein.
7     22.   Defendants, their "alternate entities," and each of them, are liable for the
8  fraudulent, oppressive, and malicious acts of their ALTERNATE ENTITIES, and each of them,
9  and each defendant's officers, directors and managing agents participated in, authorized,
10 expressly and impliedly ratified, and had full knowledge of, or should have known of, the acts of
11 each of their ALTERNATE ENTITIES as set forth herein.
12    23.   The herein-described conduct of said defendants, their ALTERNATE ENTITIES,
13 and each of them, was and is willful, malicious, fraudulent, outrageous and in conscious
14 disregard and indifference to the safety and health of "exposed persons".  Plaintiffs, for the sake
15 of example and by way of punishing said defendants, seek punitive damages according to proof.
16    WHEREFORE, plaintiffs pray judgment against defendants, their "alternate entities,"
17 and each of them, as hereinafter set forth.

## SECOND CAUSE OF ACTION
(Products Liability)

AS AND FOR A SECOND, SEPARATE, FURTHER AND DISTINCT CAUSE OF ACTION FOR PRODUCTS LIABILITY, PLAINTIFFS COMPLAIN AS FOLLOWS: PLAINTIFF MICHAEL HALSETH COMPLAINS OF DEFENDANTS GENERAL ELECTRIC COMPANY,   DOES 1-300, THEIR "ALTERNATE ENTITIES," AND EACH OF THEM; PLAINTIFF , ROBERT WAGENMAN COMPLAINS OF DEFENDANTS GENERAL ELECTRIC COMPANY,   DOES 1-300, THEIR "ALTERNATE ENTITIES," AND EACH OF THEM; PLAINTIFF LARRY ROBINSON COMPLAINS OF DEFENDANTS GENERAL ELECTRIC COMPANY,   DOES 1-300, THEIR "ALTERNATE ENTITIES," AND EACH OF THEM; PLAINTIFF DONALD HUNTER COMPLAINS OF DEFENDANTS GENERAL

ELECTRIC COMPANY, VIAD CORP., DOES 1-300, THEIR "ALTERNATE ENTITIES," AND EACH OF THEM:

24. Plaintiffs incorporate herein by reference, as though fully set forth herein, the allegations contained in each paragraph of the First Cause of Action herein.

25. Defendants, their ALTERNATE ENTITIES, and each of them, knew and intended that the above-referenced asbestos and asbestos-containing products would be used by the purchaser or user without inspection for defects therein or in any of their component parts and without knowledge of the hazards involved in such use.

26. Said asbestos and asbestos-containing products were defective and unsafe for their intended purpose in that the inhalation of asbestos fibers causes serious disease and/or death. The defect existed in the said products at the time they left the possession of defendants, their "alternate entities," and each of them. Said products did, in fact, cause personal injuries, including asbestosis, other lung damage, and cancer to "exposed persons", including plaintiffs herein, while being used in a reasonably foreseeable manner, thereby rendering the same defective, unsafe and dangerous for use.

27. "Exposed persons" did not know of the substantial danger of using said products. Said dangers were not readily recognizable by "exposed persons". Said defendants, their ALTERNATE ENTITIES, and each of them, further failed to adequately warn of the risks to which plaintiffs and others similarly situated were exposed.

28. In researching, manufacturing, fabricating, designing, modifying, testing or failing to test, warning or failing to warn, labeling, assembling, distributing, leasing, buying, offering for sale, supplying, selling, inspecting, servicing, installing, contracting for installation, repairing, marketing, warranting, rebranding, manufacturing for others, packaging and advertising asbestos and asbestos-containing products, defendants, their ALTERNATE ENTITIES, and each of them, did so with conscious disregard for the safety of "exposed persons" who came in contact with said asbestos and asbestos-containing products, in that said defendants, their ALTERNATE ENTITIES, and each of them, had prior knowledge that there was a substantial risk of injury or death resulting from exposure to asbestos or asbestos-

containing products, including, but not limited to, asbestosis, other lung damages and cancer. Said knowledge was obtained, in part, from scientific studies performed by, at the request of, or with the assistance of, said defendants, their ALTERNATE ENTITIES, and each of them, and which knowledge was obtained by said defendants, their ALTERNATE ENTITIES, and each of them on or before 1930, and thereafter.

29. On or before 1930, and thereafter, said defendants, their ALTERNATE ENTITIES and each of them, were aware that members of the general public and other "exposed persons", who would come in contact with their asbestos and asbestos-containing products, had no knowledge or information indicating that asbestos or asbestos-containing products could cause injury, and said defendants, their ALTERNATE ENTITIES, and each of them, knew that members of the general public and other "exposed persons", who came in contact with asbestos and asbestos-containing products, would assume, and in fact did assume, that exposure to asbestos and asbestos-containing products was safe, when in fact said exposure was extremely hazardous to health and human life.

30. With said knowledge, said defendants, their ALTERNATE ENTITIES, and each of them, opted to research, manufacture, fabricate, design, modify, label, assemble, distribute, lease, buy, offer for sale, supply, sell, inspect, service, install, contract for installation, repair, market, warrant, rebrand, manufacture for others, package and advertise said asbestos and asbestos-containing products without attempting to protect "exposed persons" from or warn "exposed persons" of, the high risk of injury or death resulting from exposure to asbestos and asbestos-containing products. Rather than attempting to protect "exposed persons" from, or warn "exposed persons" of, the high risk of injury or death resulting from exposure to asbestos and asbestos-containing products, defendants, their ALTERNATE ENTITIES, and each of them, intentionally failed to reveal their knowledge of said risk, and consciously and actively concealed and suppressed said knowledge from "exposed persons" and members of the general public, thus impliedly representing to "exposed persons" and members of the general public that asbestos and asbestos-containing products were safe for all reasonably foreseeable uses. Defendants, their ALTERNATE ENTITIES, and each of them, engaged in this conduct and

made these implied representations with the knowledge of the falsity of said implied representations.

31. The above-referenced conduct of said defendants, their ALTERNATE ENTITIES, and each of them, was motivated by the financial interest of said defendants, their ALTERNATE ENTITIES, and each of them, in the continuing, uninterrupted research, design, modification, manufacture, fabrication, labeling, assembly, distribution, lease, purchase, offer for sale, supply, sale, inspection, installation, contracting for installation, repair, marketing, warranting, rebranding, manufacturing for others, packaging and advertising of asbestos and asbestos-containing products. In pursuance of said financial motivation, said defendants, their ALTERNATE ENTITIES, and each of them, consciously disregarded the safety of "exposed persons" and in fact were consciously willing and intended to permit asbestos and asbestos-containing products to cause injury to "exposed persons" and induced persons to work with and be exposed thereto, including plaintiffs.

32. Plaintiffs allege that the aforementioned defendants, their ALTERNATE ENTITIES, and each of them impliedly warranted their asbestos and asbestos-containing products to be safe for their intended use but that their asbestos and asbestos-containing products, created an unreasonable risk of bodily harm to exposed persons.

33. Plaintiffs further allege their injuries are a result of cumulative exposure to asbestos and various asbestos-containing products manufactured, fabricated, inadequately researched, designed, modified, inadequately tested, labeled, assembled, distributed, leased, bought, offered for sale, supplied, sold, inspected, serviced, installed, contracted for installation, repaired, marketed, warranted, rebranded, manufactured for others, packaged and advertised by the aforementioned defendants, their ALTERNATE ENTITIES, and each of them and that plaintiffs cannot identify precisely which asbestos or asbestos-containing products caused the injuries complained of herein.

34. Plaintiffs relied upon defendants', their "alternate entities'", and each of their representations, lack of warnings, and implied warranties of fitness of asbestos and their asbestos-containing products. As a direct, foreseeable and proximate result thereof, plaintiffs

1  have been injured permanently as alleged herein.

2  35.  As a direct and proximate result of the actions and conduct outlined herein, plaintiffs have suffered the injuries and damages previously alleged.

WHEREFORE, plaintiffs pray judgment against defendants, their ALTERNATE ENTITIES, and each of them, as hereinafter set forth.

## IV.

## PRAYER

WHEREFORE, plaintiffs pray judgment against defendants, their ALTERNATE ENTITIES, and each of them in an amount to be proved at trial in each individual case, as follows:

(a)  For plaintiffs' general damages according to proof;

(b)  For plaintiffs' loss of income, wages and earning potential according to proof;

(c)  For plaintiffs' medical and related expenses according to proof;

(d)  For plaintiffs' cost of suit herein;

(e)  For exemplary or punitive damages according to proof;

(f)  For damages for fraud according to proof; and

(g)  For such other and further relief as the Court may deem just and proper, including costs and prejudgment interest.

Dated: April 15, 2007            BRAYTON❖PURCELL LLP

/s/ *David R. Donadio*

By: _____
David R. Donadio
Attorneys for Plaintiffs

### JURY DEMAND

Plaintiffs hereby demand trial by jury of all issues of this cause.

Dated: April 15, 2007            BRAYTON❖PURCELL LLP

/s/ *David R. Donadio*

By: _____
David R. Donadio

1 | Attorneys for Plaintiffs
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28